UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| EASTERN MAINE ELECTRIC COOPERATIVE INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:14-cv-00493-NT |
| FIRST WIND HOLDINGS LLC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## RECOMMENDED DECISION

In this action, Plaintiff Eastern Maine Electric Cooperative alleges that Defendants, which are several companies with existing or planned wind power generation facilities (wind farms) on Stetson Mountain, Rollins Mountain, and Bowers Mountain, breached an agreement related to Defendants' development and utilization of the Stetson Transmission Line, an electric transmission line that is intended to connect the wind farms to the regional electric grid.

The matter is before the Court on Defendants' Motion to Dismiss (ECF No. 7).[1] As explained below, following a review of the pleadings, and after consideration of the parties' arguments, the recommendation is that the Court deny the motion.

### BACKGROUND

The facts set forth herein are derived from Plaintiff's Complaint, which facts are deemed true when evaluating the Motion to Dismiss.[2] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998). The facts also include the terms of the parties' agreement that is the subject of

---

[1] The Court referred the motion for report and recommended decision.

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

Plaintiff's Complaint. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

Plaintiff is a transmission and distribution utility providing service in Washington, Penobscot and Aroostook Counties. (Complaint ¶ 2.) Defendants are entities with interests in wind farm development and operation. (*Id.* ¶¶ 4-14.) Defendant First Wind Holdings at one time owned all of the defendant LLCs. However, for a time, Defendant Northeast Wind Partners II owned the defendant LLCs. Defendant Northeast Wind Partners II was jointly owned by Defendant First Wind Holdings and Emera Inc.[3] (*Id.* ¶ 14.)

In 2008, through "the Assignment Agreement," Plaintiff assigned to Evergreen Wind Power V, LLC, certain easements and rights of way to facilitate Evergreen Wind Power V's construction of the Stetson Transmission Line. (*Id.* ¶ 21.) Under the terms of the Assignment Agreement, Evergreen could transfer its rights to a subsidiary of First Wind Holdings, provided that the subsidiary was not a public utility. (*Id.* ¶ 22.) In 2010, Evergreen Wind Power V transferred its rights to Defendant Evergreen Gen Lead, its subsidiary. (*Id.* ¶ 23.) Meanwhile, as the result of certain agreements between Emera and First Wind Holdings, Emera acquired an ownership interest in Northeast Wind Partners II and, by extension, in Evergreen Gen Lead. (*Id.* ¶ 30.) Emera's acquisition of an interest in Evergreen Gen Lead allegedly constituted a violation of the Assignment Agreement because Emera (a utility), without Plaintiff's consent, obtained an interest in the rights transferred by Plaintiff for the construction and utilization of the Stetson Transmission Line. (*Id.* ¶¶ 31-32.)

---

[3] Emera Inc., a foreign corporation, does business in the State of Maine through its subsidiaries, including Emera Maine. Emera, Inc., which is not named as a defendant in this matter, is a transmission and distribution utility and is at times referred to in Plaintiff's Complaint as Bangor Hydro. (*Id.* ¶¶ 15-16.) When this action was filed, Emera Inc. held an ownership interest in the LLCs named as Defendants in this action. (Complaint ¶ 14.) Subsequently, Emera Inc. sold its interest in Defendants, which are wholly owned indirectly by SunEdison, Inc. and/or TerraForm Power, Inc. (Am. Notice of Interested Parties, ECF No. 16.)

To address the consent requirement of the Assignment Agreement, Plaintiff, First Wind, Emera Inc. and Bangor Hydro negotiated a "Term Sheet" (Complaint Exh. A). Pursuant to the Term Sheet, Plaintiff, for the consideration set forth in the Term Sheet, would have a right to obtain a one-third ownership interest[4] in the Stetson Transmission Line. (*Id.* ¶ 33; Term Sheet, PageID # 35.) The agreement contemplated that upon Plaintiff's acquisition of an ownership interest in the transmission line, Plaintiff was to provide its consent. (*Id.*)

The parties understood that they needed to reach a "Definitive Agreement" to confirm the terms of their agreement. (*Id.* ¶ 34.) Because the parties agreed that pending Public Utility Commission proceedings took precedence over the formation of the Definitive Agreement, in order to avoid delay in the PUC proceedings, the parties deferred preparation of the Definitive Agreement and elected to set forth their understanding in the Term Sheet. (*Id.*) The Term Sheet required the parties to "negotiate in good faith a definitive Agreement to implement the provisions of this Term Sheet." (*Id.*, Term Sheet, PageID # 43.) On December 23, 2011, the parties also entered into a "Precedent Agreement" (Complaint Exh. B).[5]

The Precedent Agreement provided that the parties would proceed in good faith to negotiate, draft, execute and deliver within 60 days a definitive agreement. (Precedent Agreement, PageID # 51.) Despite the terms of the agreement, more than two years passed without a definitive agreement. (Complaint ¶ 38.) According to Plaintiff, First Wind demanded onerous and impossible provisions in the definitive agreement, including, in particular, the demand that Plaintiff insure its portion of the Stetson Transmission Line against casualty loss in an amount

---

[4] Plaintiff was to own a section of the line amounting to one-third its length. (PageID # 35.)

[5] The Term Sheet is identified in the Precedent Agreement as an attachment. (PageID # 50.)

sufficient to cover the cost of replacement of the Line, which demands prevented the consummation of the deal. (*Id.* ¶¶ 39-47.)

Both the Term Sheet and the Precedent Agreement required Bangor Hydro to issue a letter of credit payable to Plaintiff in the amount of $1.75 million. (*Id.* ¶ 37.) The letter of credit had an annual term and was twice extended. After the second extension, Bangor Hydro asserted that it would not renew the letter of credit again. (*Id.* ¶ 48.) According to Plaintiff, "[a]s it had become evident that the Definitive Agreement would not be consummated due to the unreasonable negotiation demands by First Wind, in order to avoid the loss of its right to the $1.75 million, [Plaintiff] called on the Letter of Credit," which was paid. (*Id.*)

Plaintiff alleges that First Wind refused to negotiate in good faith and that, had it done so, the parties would have reached a definitive agreement, which would have a present day value to Plaintiff of more than $10 million. (*Id.* ¶ 51.) In its Complaint, Plaintiff asserts five counts: (1) breach of contract, (2) promissory estoppel, (3) unjust enrichment, (4) fraud, and (5) negligent misrepresentation. (*Id.* ¶¶ 52-93.) Defendants seek the dismissal of each count.

The following provisions of the Precedent Agreement are material to Defendants' Motion to Dismiss:

> 2. Immediately upon execution of this Agreement, BHE [Bangor Hydro] will issue an Irrevocable Standby Letter of Credit in the amount of $1.75 million for the benefit of EMEC upon the following conditions:
>
>> a. In the event that, at the time of the transfer of the Gen-Lead Assets to JV Holdco or any other entity, a definitive agreement between the parties is not yet executed, EMEC agrees to grant all necessary consents of EMEC regarding the transfer of the Gen-Lead Assets to JV Holdco, for the purpose of the Gen-Lead Assets being subsequently transferred to EMEC and BHE. Upon the granting of consent, the Letter of Credit shall be due and payable to EMEC, and EMEC may present the Letter of Credit for payment at EMEC's discretion, provided that EMEC shall have first supplemented its consent to include consent to any subsequent transfer of the Gen-Lead Assets by JV Holdco's transfer to BHE (or its affiliate) alone. Upon

> EMEC's receipt of payment under this Section, either Party may terminate this Agreement upon two business days' notice.
>
> b. The Letter of Credit shall also allow for draw by EMEC under the conditions provided in the Term Sheet to the extent that a definitive agreement is executed.

(PageID # 51.)

By affidavit, Defendants assert that on November 20, 2014, Emera Maine, successor in interest to Bangor Hydro Electric Company, sent Plaintiff a letter by which it purported to terminate the Precedent Agreement pursuant to paragraph 2(a). (Declaration of Karen Holyoke, ECF No. 7-1; Letter of Gerard Chasse to Scott Hallowell dated Nov. 17, 2014, ECF No. 7-2.)

## DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may challenge the existence of subject matter jurisdiction in the court before which an action is proceeding. "In ruling on a motion to dismiss for lack of subject matter jurisdiction ... the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996). "In addition, the court may consider whatever evidence has been submitted...." *Id.*

In accordance with Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, a

plaintiff must establish that the allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claims at issue. *Id.*

**B.     Analysis**

Defendants argue that they are entitled to dismissal because the Precedent Agreement was terminated according to its express terms following Plaintiff's election to draw on the letter of credit. More specifically, as to the contract and promissory estoppel theories, Defendants argue that the claims are moot due to the "expiration" of the contract. (Motion to Dismiss at 5-9.) Defendants contend that in the remaining counts, Plaintiff has failed to state claims for which relief may be granted. (*Id.* at 9-15.)

*1.     Mootness*

According to Defendants, because Plaintiff's allegations establish the existence of all of the factual predicates necessary to permit Emera Maine to exercise the termination provision of the Precedent Agreement, and because Emera Maine in fact exercised its right to terminate the Precedent Agreement, Plaintiff's contract and quasi-contract claims are moot. In support of their argument, which is presented as a challenge to the Court's subject matter jurisdiction over the matter, Defendants cite *American Civil Liberties Union of Massachusetts v. United States Conference of Catholic Bishops*, 705 F.3d 44 (1st Cir. 2013) ("*Catholic Bishops*"), wherein the Court declared moot a challenge to a contract after the expiration of the contract.

"The First Circuit has observed that it is appropriate to consider mootness challenges as challenges to a court's subject-matter jurisdiction, and that '[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1).'" *Trafford v. City of Westbrook*, 669 F. Supp. 2d 133, 140 (D. Me. 2009) (quoting *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001)). In the context of this Rule 12(b)(1) challenge, the Court can

6

consider Defendants' factual representation regarding Emera Maine's assertion that it intended to exercise of the termination clause of the Precedent Agreement. *Aversa,* 99 F.3d at 1210.

Contrary to Defendants' argument, *Catholic Bishops* does not support Plaintiff's request for dismissal of the contract and quasi-contract claims. In narrow terms, *Catholic Bishops* holds that in the context of litigation challenging the constitutionality of a government contract and grant, upon expiration of the contract or grant, ordinarily, no live controversy is left for a court to address. 705 F.3d at 53. As explained in *Catholic Bishops*, such litigation ordinarily does not include any claim for damages, and a plea for injunctive and declaratory relief loses "sufficient immediacy and reality" when the challenged government conduct ceases. *Id.* at 54. Viewed more broadly, *Catholic Bishops* provides that a "challenge" to the validity of a contract is moot after the expiration of the contract when the relief requested, typically injunctive relief, is no longer relevant or practically available.

In this case, unlike in *Catholic Bishops*, Plaintiff does not "challenge" the validity of the contract. In fact, Plaintiff argues that the contract is a valid agreement that Defendants have breached. Perhaps more importantly, Plaintiff seeks to recover the monetary damages that it alleges resulted from Defendants' breach. The relief requested, therefore, remains available. To accept Defendants' argument, the Court would in essence have to conclude that whenever a contract term ends, a party to the contract is foreclosed from asserting a claim for money damages for breach of the agreement. Under such a rule, a party could commit a material breach of a contract on the final day of the contract's term with impunity. *Catholic Bishops* does not contemplate such a result. Indeed, such a result would be fundamentally unfair. In short, Plaintiff's contract-based claims are not moot.[6]

---

[6] Although the Precedent Agreement permitted either party to terminate the Precedent Agreement following Plaintiff's drawing down the letter of credit, it does not necessarily follow that termination of the Precedent Agreement

### 2. *Unjust enrichment*

In Count three, Plaintiff asserts a claim of unjust enrichment. A claim of unjust enrichment permits "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271. Defendants argue that dismissal is appropriate because Plaintiff's unjust enrichment claim is incompatible with Plaintiff's contention that the parties have a written contract. (Motion to Dismiss at 9.) Although recovery on both a contract claim and an unjust enrichment claim is not permitted, *Ingram v. Rencor Controls, Inc.*, 256 F. Supp. 2d 12, 22 (D. Me. 2003), Plaintiffs are permitted to plead legal theories in the alternative. Fed. R. Civ. P. 8(d); *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 191 (D. Me. 2010).[7] Therefore, dismissal at this stage of the proceedings is not warranted.

### 3. *Fraud*

In Count four, Plaintiff alleges fraud. To prevail on a claim of fraud, a plaintiff must establish that the defendant knowingly made a false representation of a material fact, or made a false representation with reckless disregard as to the truth or falsity of the representation, that the defendant made the representation for the purpose of inducing another to act in reliance on the

---

discharged the parties of all duties and extinguished all rights that may have arisen in the course of their dealings. For example, the Precedent Agreement did not include an integration clause, an omission that is material to the legal significance of any election to terminate the Precedent Agreement. *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 17, 956 A.2d 104, 109; *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 12, 868 A.2d 220, 225.

[7] In *In re Wage Payment Litig.*, 2000 ME 162, ¶ 19, 759 A.2d 217, 224, the Maine Supreme Judicial Court affirmed the dismissal of unjust enrichment claims brought on behalf of employees where it was established that the employment relationship was governed by contract. Here, Defendants dispute that there is a contract capable of supporting any recovery.

material falsehood, and that the plaintiff justifiably relied on the representation. *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280, 1286-87.

Defendants argue that because Plaintiff alleges that it received $1.75 million, Plaintiff has not alleged and cannot establish that it suffered any damages in reliance on Defendants' misrepresentations. (Motion to Dismiss at 11-12.) At this stage of the proceedings, Plaintiff does not have to demonstrate that it would in fact recover damages as the result of the alleged fraud. As alleged, the fact that Plaintiff received the $1.75 million payment does not foreclose a recovery of additional damages. Plaintiff has alleged that it was damaged as the result of the asserted fraud, which is sufficient at this stage of the proceedings.

Defendants also argue that Plaintiff has failed to allege the claim of fraud with sufficient particularity for purposes of Rule 9 of the Federal Rules of Civil Procedure. Rule 9(b) "requires that fraud be alleged with particularity." *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 15 (1st Cir. 2004). "This heightened pleading standard is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" *Id.* (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)). The standard serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987).

Plaintiff alleges that Defendant First Wind Holdings falsely and repeatedly represented its intention to negotiate the Definitive Agreement in good faith to achieve terms similar to those outlined in the Term Sheet, that Defendant breached the agreement, and that it suffered damages as the result of the breach. Simply stated, Plaintiff has alleged facts sufficient to notify Defendant

of the bases of a non-frivolous, non-pretextual claim. Defendants thus are not entitled to dismissal of Plaintiff's fraud claim.

### 4. *Negligent Misrepresentation*

Plaintiff alleges negligent misrepresentation in Count five. In *Binette v. Dyer Library Ass'n*, the Maine Law Court defined the elements of a claim for negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

688 A.2d 898, 903 (Me. 1996) (quoting *Restatement (Second) of Torts* § 552(1) (1977)).

Defendants argue that dismissal is appropriate because Plaintiff cannot demonstrate damages or causation. (Motion to Dismiss at 13.) "In a negligent misrepresentation case, damages are limited to the plaintiff's out-of-pocket losses." *Noveletsky v. Metro. Life Ins. Co.*, — F. Supp. 3d —, No. 2:12-cv-00021-NT, 2014 WL 4826206, at *22 (D. Me. Sept. 24, 2014). According to Defendants, Plaintiff has not alleged that it incurred out-of-pocket losses that are related to the alleged misrepresentations.

Plaintiff has alleged that it was "harmed by its reliance on the negligent misrepresentation." (Complaint ¶ 93.) Giving Plaintiff's allegation all reasonable inferences as the Court is required on Defendants' motion to dismiss, Plaintiff's allegation can be construed to encompass a claim for damages for an out-of-pocket loss as the result of Defendants' misrepresentations. Plaintiff, therefore, has stated a claim for negligent misrepresentation.

**CONCLUSION**

Based on the foregoing analysis, the recommendation is that the Court deny Defendants' Motion to Dismiss (ECF No. 7).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of March, 2015.